Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, August 27, 2010 3:42:49 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PAUL HERBERT CROSS, JR., and | ) | Case No. 09-1823 |
| MELISSA HOPE CROSS, | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| | ) | |
| FIRST EXCHANGE BANK OF WV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 09-110 |
| | ) | |
| PAUL HERBERT CROSS, JR., and | ) | |
| MELISSA HOPE CROSS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

First Exchange Bank seeks entry of summary judgment on its claim against Paul Herbert Cross, Jr. (the "Debtor), to except a foreclosure deficiency balance of about $50,000 from his Chapter 7 discharge under 11 U.S.C. § 523(a)(4). First Exchange Bank asserts that the Debtor, as one of the Bank's loan officers, owed it a fiduciary duty in applying to the Bank for his own 2009 home refinance loan. It further asserts that, in dereliction of his duties owed to it, the Debtor actively participated in the procurement of the loan, under circumstances which he knew to be beyond the limits of the Bank's lending policies, using his status as a loan officer, and an "as is" appraisal that contained erroneous assumptions concerning the current condition of his real estate.

The Debtor began working at First Exchange Bank in 1996, and he was promoted to a loan

officer on May 31, 2001. As a bank loan officer, the Debtor reviewed loan applications made by customers to determine whether the customers were credit worthy. The Debtor's duties also included certain collection work on past due customer accounts. As an employee of the Bank, the Debtor was supervised by Mr. Brescoach, who received and approved the Debtor's loan application.

Section 523(a)(4) of the Bankruptcy Code provides that a Chapter 7 discharge "does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity . . . ." To prevail on a § 523(a)(4) claim, the movant must establish, by a preponderance of the evidence, the existence of both: (A) a fiduciary relationship and (B) a defalcation while acting in that fiduciary capacity. *E.g.*, *Grogan v. Garner*, 498 U.S. 279, 282-83, (1991) (applying a preponderance of the evidence standard to § 523(a) causes of action); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996) ("[U]nder § 523(a)(4), Fowler Brothers had to establish the following two elements to prevent the discharge of Mr. Young's debt: a fiduciary relationship between Fowler Brothers and Mr. Young and fraud or defalcation committed by Mr. Young in the course of that fiduciary relationship."). Because this exception to discharge contravenes the "fresh start" policy of the Bankruptcy Code, it is construed narrowly in favor of the debtor. *E.g.*, *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 983 (3d Cir. 1997) ("[E]xceptions to discharge are to be strictly construed in favor of the debtor."); *Centra Bank, Inc. v. Burton (In re Burton)*, 416 B.R. 539, 542 (Bankr. N.D.W. Va. 2009) (same).

Regarding the existence of a fiduciary relationship, the definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 U.S. App. LEXIS 4743 at *7 (4th Cir. March 19, 1999) (citing *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)). Under the federal common law, the term "fiduciary" includes express or technical trusts. *E.g.*, *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934) ("[T]he statute "speaks of technical trusts, and not those which the law implies from contract."); *R.E. Am., Inc., v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997) ("[T]he defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor.").

Even in the absence of an express or technical trust, however, "'the existence of a state statute or common law doctrine imposing trust-like obligations on a party may, at least in some

circumstances, be sufficient to create a technical trust relationship for purposes of section 523(a)(4).'" *Burton*, 416 B.R. at 543 (quoting 4 *Collier on Bankruptcy* ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2009). Thus, certain fiduciary relationships exist that are determined to be so special that they fall within the meaning of "fiduciary" in § 523(a)(4) despite the absence of an express trust or other actual, preexisting notice to the debtor that he is holding property in trust for another.  *Id.*  These relationships have included an ambassador and the property of the ambassador's represented country, *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), a financial advisor committing fraud and found to be a fiduciary by default in a state court judgment, *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17 (4th Cir. 1997), real estate agents handling closing funds, *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir. 1954), attorneys handling client funds, *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162 (2d Cir. 1999), a corporate officer and director mishandling corporate funds, *Burton*, 416 B.R. at 546, and those acting under a power of attorney to an incompetent person, *Ostrum v. Porter*, No. 03-118; 2008 Bankr. LEXIS 109 (Bankr. N.D.W. Va. Jan. 10, 2008).

   As stated by the Court of Appeals for the Second Circuit, the reason certain types of statutory or common law fiduciary relationships are encompassed within the meaning of "fiduciary" as used in § 523(a)(4) is because the focus of *Davis*, *supra*, was to prevent ordinary commercial debts from being excepted from discharge, and those cases never cast "serious doubt on the fact that certain relationships not constituting actual trusts are within the defalcation exception." *Hayes*, 183 F.3d at 169; *see also In re Marchiando*, 13 F.3d 1111, 1115-16 (7th Cir. 1994) (stating that a fiduciary relationship that imposes duties in advance of a breach by the debtor is within the scope of § 523(a)(4)); *Hamby*, 217 F.2d at 80 (holding that the term fiduciary in § 523(a)(4) encompasses those in a common law fiduciary relationship that have been entrusted with funds such that the relationship between the parties is more than merely debtor-creditor).

   Here, the Bank asserts that the Debtor, as a loan officer working for the Bank, had a fiduciary, trust-like duty to deal fairly with the Bank and only apply for a loan that the Debtor knew met the Bank's written lending policies.  In support of its contention, the Bank cites to W. Va. Code § 31D-8-842 and *Harper v. Rankin*, 141 F. 626 (4th Cir. 1905).

   Under W. Va. Code § 31D-8-842, providing standards of conduct for corporate officers, "[a]n officer, when performing in his or her official capacity, shall act: (1) [i]n good faith; (2) [w]ith

the care that a person in a like position would reasonably exercise under similar circumstances, and (3) [i]n a manner the officer reasonably believes to be in the best interests of the corporation." The term "officer" is not defined by the West Virginia Business Corporation Act, but, with regard to corporate law, "the term refers esp. to a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer." *Black's Law Dictionary*, 1117 (8th ed. 2004).

As a loan officer for the Bank examining customer's credit worthiness and working under Mr. Brescoach as the supervising loan officer, the Debtor is not the type of corporate officer envisioned by W. Va. Code § 31D-8-842 to make that section applicable in this case. No indication exists in the record on summary judgment that the Debtor was appointed by a board of directors to manage the daily operations of the Bank, that the Debtor is named in the Bank's by-laws as an officer, or that he had some similar type obligation to the Bank and its shareholders as an employee/loan officer.

Likewise, in *Harper v. Rankin*, 141 F. 626 (4th Cir. 1905), the debtor was the former vice president of a bank, and had "active management and control over the affairs of said bank . . . ." *Id.* at 627. While the court did state that, as vice president, the debtor owed the bank a fiduciary duty, the difference between being the vice president of the bank and an employee/ loan officer under the supervision of other employees makes *Harper* inapposite. The employee/employer relationship does not generally entail the type of fiduciary duty contemplated by 11 U.S.C. § 523(a)(4). *E.g.*, *Grow Up Japan, Inc. v. Yoshida (In re Yoshida)*, No. 1-09-1415, 2010 Bankr. LEXIS 2502 at *15 (Bankr. E.D.N.Y. Aug. 23, 2010) ("[A]n employment relationship alone does not give rise to a fiduciary relationship for purposes of § 523(a)(4). Nor does the elevation of an employee to a managerial position bring into being a fiduciary relationship within the purview of § 523(a)(4)."); *E.L. Hamm & Assoc. v. Sparrow (In re Sparrow)*, 306 B.R. 812, 832-34 (Bankr. E.D. Va. 2003) (holding that for purposes of § 523(a)(4), no fiduciary relationship existed between an employee and the employer); *BPS Guard Servs. v. Myrick (In re Myrick)*, 172 B.R. 633, 636 (Bankr. D. Neb. 1994) (concluding that "the employee/employer relationship in the present case does not give rise to the elevated level of fiduciary capacity required by § 523(a)(4)."); *DL & B Oil Co. v. Dawson (In re Dawson)*, 16 B.R. 343, 346 (Bankr. N.D. Ill. 1982) (holding that the operator of gasoline service station, even though a "trusted agent" of the owner, is not a fiduciary in the strict and narrow sense

used in the Bankruptcy Code).

Of course, an employee does have certain common law duties to an employer, such as the duty of competence, care in the performance of assigned duties, obedience to reasonable rules, decent conduct, and loyalty. *See generally* Jeffery M. Judd, Note, *The Implied Covenant of Good Faith and Fair Dealing, Examining Employees' Good Faith Duties*, 39 Hastings L.J. 483, 498 (1988). However, the employee/employer relationship is not sufficiently akin to that of an ambassador and the property of the ambassador's represented country, real estate agents handling closing funds, attorneys handling client funds, a corporate officer and director handling funds of the corporation, or those acting under a power of attorney to an incompetent person, to make the relationship fall within the scope of trust-like obligations within the preview of § 523(a)(4). In this court's view, the Debtor's application for a loan – made to a supervisory loan officer who determined whether to approve it and not made pursuant to his assigned duties as an employee – is more akin to an ordinary commercial debt, and, therefore, is not subject to § 523(a)(4).

Because the Bank has failed to demonstrate on summary judgment that the Debtor is a fiduciary within the meaning of 11 U.S.C. § 523(a)(4), the court will enter a separate order pursuant to Fed. R. Bankr. P. 7058 that denies its motion for summary judgment.