Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, October 01, 2010 1:05:05 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PAUL HERBERT CROSS, JR., and ) | Case No. 09-1823 |
| MELISSA HOPE CROSS, ) | |
| ) | |
| Debtors. ) | Chapter 7 |
| ─────────────────────────── ) | |
| ) | |
| FIRST EXCHANGE BANK OF WV, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 09-110 |
| ) | |
| PAUL HERBERT CROSS, JR., ) | |
| ) | |
| Defendant. ) | |
| ─────────────────────────── ) | |
| ) | |

## MEMORANDUM OPINION

First Exchange Bank seeks to except about $74,000 from the anticipated Chapter 7 discharge of Paul Herbert Cross (the "Debtor") pursuant to 11 U.S.C. § 523(a)(4). The Bank argues that the Debtor, a former loan officer employed by the Bank, owed it a fiduciary duty on account of his status as an officer, and that he committed defalcation by applying for a home refinancing loan that he knew violated the Bank's Loan Policy.

For the reasons stated herein, the court will deny the relief sought by the Bank.

## I. BACKGROUND

Pursuant to the Bank's by-laws, the officers of the Bank are "a Chairman of the Board, President & CEO, one or more Vice Presidents, any one of which may be designated as Executive

Vice President or a Senior Vice President, Chief Financial Officer, and such other officers as may be required." (Ex. 3, Art. III, § 1). Officers are appointed by the Board of Directors, and the "other officers as may be required" are to have "such powers and duties as may be assigned to them from time to time by the Board of Directors." (Ex. 3, Art. III, § 7). At a May 8, 2007 meeting of the Board of Directors, the Debtor was recommended and appointed as a "Loan / Collection Officer."

As a bank loan officer, the Debtor reviewed loan applications made by customers to determine whether the customers were credit worthy. The Debtor had authority to make real estate loans up to $150,000, plus other loans up to $50,000. The Debtor was not designated as a "senior lender" with regard to his loan authority with the Bank, and had no authority to approve loans to employees of the Bank.

Pursuant to the Bank's Loan Policy, loans to employees or officers had to be approved by the CEO or designated senior lender. The loans were to be subject to the same standards as all other loans, and made on the same terms as offered to other borrowers. Employees were not to receive preferential treatment with regard to the collateral, underwriting standards, rate, or documentation. In addition, the Bank maintained an Insiders / Conflict of Interest Policy, where insiders were obligated to deal fairly with the Bank in business transactions and to ensure that their own business relationships with the Bank were always at arms length.

On February 18, 2009, the Debtor applied for a $122,098 home refinance loan from the Bank. The Debtor filled out his application, and submitted it to his supervisor, David Brescoach. Approval of the Debtor's residential loan would require two exceptions to the Bank's Loan Policy. First, the Bank's policy is to not approve a residential loan when the borrower had a debt to income ratio greater than 45%. The Debtor's was 68%. Second, the Bank's policy is to not approve a residential loan when the loan to collateral value was greater than 85%. The Debtor's was 90%.

The Debtor also initiated the appraisal request for his home by sending a facsimile to Donald Downs, who had been doing appraisals for the Bank for about 20 years. In fact, Mr. Downs had appraised the Debtor's house in connection with an earlier refinance loan in 2007. The purpose of the 2007 appraisal was to give an opinion as to value if the refinance proceeds were used to make certain home improvements. Namely, the loan proceeds were to be used to make repairs/upgrades to the kitchen, roof, siding, bathroom, and floor coverings. At the time of his 2009 appraisal, Mr. Downs stated that the bathroom was not close to completion and some kitchen work remained

unfinished.

When Mr. Downs submitted his March 9, 2009 appraisal to the Bank, he opined that the value of the home was $135,000 – "as is." During his September 16, 2010 testimony, Mr. Downs stated that the valuation for the property "as is" was a mistake, and that his valuation assumed that certain unfinished work would be completed; namely, the remaining bathroom and kitchen work needed to be completed to attain a value of $135,000. When Mr. Downs appraised the property, the Debtor was present, and although the Debtor did not try to influence the outcome of the appraisal, he did indicate to Mr. Downs that he needed a valuation as high as possible. Mr. Downs testified, however, that he did not treat the Debtor's appraisal as being any different than the 500 others that he had performed for the Bank.

Despite the fact that the Debtor's loan request violated the Bank's Loan Policy, Mr. Brescoach independently determined that the Debtor's loan should be approved on the grounds that the Debtor's credit report reflected good repayment habits, and he was a longtime Bank deposit / loan customer and employee with perfect repayment habits at the Bank. The Debtor's loan was not the only one made by the Bank that required an exception to the Bank's Loan Policy. In 2008 and 2009, the Bank made six loans where the debt to income ratio exceeded 45% and made 26 loans that exceeded the 85% loan to value ratio. At no time was the Debtor involved in making the determination as to whether his loan request should be approved.

Shortly after the loan was approved and funded, the Debtor defaulted on his loan payments. As a result of a foreclosure of the Debtor's residence, the Bank suffered a loss of about $74,000.

## II. DISCUSSION

The Bank asserts that the Debtor, as a named officer in the Bank's by-laws, owes it a fiduciary duty under West Virginia law. The Bank also contends that the Debtor breached his alleged fiduciary duty by applying for a loan that he knew violated the Bank's Loan Policy.

Section 523(a)(4) of the Bankruptcy Code provides that a Chapter 7 discharge "does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity . . . ." To prevail on a § 523(a)(4) claim, the movant must establish, by a preponderance of the evidence, the existence of both: (A) a fiduciary relationship and (B) a defalcation while acting in that fiduciary capacity. *E.g.*, *Grogan v. Garner*, 498 U.S. 279, 282-83, (1991) (applying a preponderance of the evidence standard to § 523(a) causes of action); *Fowler*

*Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996) ("[U]nder § 523(a)(4), Fowler Brothers had to establish the following two elements to prevent the discharge of Mr. Young's debt: a fiduciary relationship between Fowler Brothers and Mr. Young and fraud or defalcation committed by Mr. Young in the course of that fiduciary relationship."). Because this exception to discharge contravenes the "fresh start" policy of the Bankruptcy Code, it is construed narrowly in favor of the debtor. *E.g.*, *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 983 (3d Cir. 1997) ("[E]xceptions to discharge are to be strictly construed in favor of the debtor."); *Centra Bank, Inc. v. Burton (In re Burton)*, 416 B.R. 539, 542 (Bankr. N.D.W. Va. 2009) (same).

Regarding the existence of a fiduciary relationship, the definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 U.S. App. LEXIS 4743 at *7 (4th Cir. March 19, 1999) (citing *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)). Although controlled by federal common law, "'the existence of a state statute or common law doctrine imposing trust-like obligations on a party may, at least in some circumstances, be sufficient to create a technical trust relationship for purposes of section 523(a)(4).'" *Burton*, 416 B.R. at 543 (quoting 4 *Collier on Bankruptcy* ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2009). For example, in examining the scope of a corporate officer's duty to the corporation and its shareholders the Supreme Court of Appeals for West Virginia has stated that the duty encompasses fiduciary obligations:

> "While the officers and directors of a business corporation are accorded a rather broad latitude in the conduct of the affairs of the corporation, they occupy a fiduciary relationship toward it and its shareholders. . . ."

Syllabus Pt. 4, *State ex rel. Smith v. Evans*, 209 W. Va. 340, 547 S.E.2d 278 (W. Va. 2001) (quoting Syllabus Pt. 2, *Masinter v. WEBCO Co.*, 164 W. Va. 241, 262 S.E.2d 433 (W. Va. 1980)); *see also Airlines Reporting Corp. v. Ellison (In re Ellison)*, 296 F.3d 266, 271 (4th Cir. 2002) ("[T]he Ellisons, when acting as officers and directors of Sovereign Travel, 'occupied a fiduciary relationship toward [Sovereign Travel]' under West Virginia law.") (citation omitted). Accordingly, although not technically a "trustee" of corporate property, a corporate officer does "bear a relation of trust and confidence to their [corporate] principal." *Young v. Columbia Oil Co.*, 110 W. Va. 364, 158 S.E. 678, 681 (W. Va. 1937). In *Burton*, 416 B.R. at 546 – a case where the sole shareholder

and president of a corporation was accused of using corporate loan proceeds for his personal use – this court held that "the fiduciary relationship between a corporate officer and/or director to the corporation and its shareholders is a trust-type obligation that satisfies the 'fiduciary' requirement of § 523(a)(4).

Of course, even assuming, without deciding, that the Debtor's state law fiduciary obligations to the Bank as a comparatively minor loan and collection officer rises to the level of the federal fiduciary requirement of § 523(a)(4), the federal statute also requires that the Debtor be acting in that fiduciary capacity at the time of the alleged defalcation. Here, no part of the Debtor's state law fiduciary duty to the Bank as a loan and collection officer encompassed his private dealings with the Bank as a customer. The Debtor was not acting in his capacity as a corporate officer in applying for a refinance loan. Although the Debtor filled out his own loan application (which he knew would require the Bank to make two exceptions to its Loan Policy) and initiated the appraisal process, he submitted his loan application to Mr. Brescoach, who independently determined whether to approve the application, and the appraiser, Mr. Downs, testified that his opinion as to the value of the Debor's residence was not influenced in any way by the fact that the Debtor was a loan and collection officer of the Bank. Mr. Brescoach ultimately decided to approve the application based on the independent real estate appraisal of Mr. Downs, the Debtor's good credit history, and his steady employment. In short, the Debtor was not acting in his official capacity as a fiduciary in applying for a loan, did not handle any corporate property in acting as a Bank customer, and was dealing with the Bank in an arms' length transaction. Consequently, even assuming that the Debtor's minor officer duties at the Bank made him a fiduciary within the meaning of § 523(a)(4), the Debtor could not commit a defalcation in breach of the alleged federal fiduciary duty because he was not acting within the scope of his duties when he applied for a loan as a customer of the Bank.

### III. CONCLUSION

For the above-stated reasons, the court will enter a separate order pursuant to Fed. R. Bankr. P. 7058 that denies the relief sought by the Bank in its adversary complaint.